UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GILBERT ROMAN, *PRO SE*,

      Plaintiff,

v.                                                    Case No. 6:26-CV-01066-JSS-RMN

SCIENS BUILDING SOLUTIONS,
LLC,

      Defendant.

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.    *Pro Se* Plaintiff, Gilbert Roman, brings this action against Defendant, Sciens

Building Solutions, LLC, and alleges as follows:

### NATURE OF THE CASE

2.    This is a civil action for compensatory damages, punitive damages, other

monetary relief, equitable relief, and attorney fees arising under 42 U.S.C. §

1981 *et seq.* ("§ 1981"); 42 U.S.C. § 2000e-2 ("Title VII"); and the Florida Civil

Rights Act, Fla. Stat. §§ 760.01-760.11 ("FCRA").

### PARTIES

3. Plaintiff is a black Hispanic male of Puerto Rican descent domiciled in Polk County, Florida, and formerly employed by Defendant in the capacity of Certified Fire Sprinkler Inspector, from October 2024 to September 2025.

4. Defendant is a Delaware Limited Liability Corporation, headquartered in Pleasanton, California, with a branch office in Orlando, Florida.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1343, as Plaintiff has asserted claims that arise under federal laws of the United States.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to federal claims in this action such that they form part of the same case or controversy.

7. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## CONDITIONS PRECEDENT

8. Fla. Stat. Ann. § 760.11(4) provides, in part: "[i]f the commission [(Florida Commission on Human Relations ("FCHR"))] determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the [FCRA], the aggrieved person may . . . (a) [b]ring a civil action against the person named in the complaint in any court of competent jurisdiction . . . ." Fla. Stat. § 760.11(8), in turn, provides: "[i]f the commission

2

fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days after the filing of the complaint: (a) [a]n aggrieved person may proceed under subsection (4) as if the commission determined that there was reasonable cause . . .."

9. On or about December 1, 2025, Plaintiff dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the FCHR.

10. On March 18, 2026, the EEOC issued a notice of the right to sue the Defendant to the Plaintiff, stating that it made no determination whether violations of applicable statutes occurred.

11. Under Fla. Stat. § 760.11(8), Plaintiff is entitled to proceed as if the FCHR had issued a reasonable cause determination that a discriminatory practice has occurred in violation of the FCRA, as more than 180 days have elapsed since that filing.

## FACTS

12. Defendant is a major fire, life safety, and security provider in the US, with a majority white staff across the nation, who hired Plaintiff as 'Lead Fire Sprinkler Inspector' for the Orlando International Airport in early October 2024.

13. Plaintiff was one of the few non-white employees in Defendant's entire Orlando operations.

3

14. In his capacity as Certified Fire Sprinkler Inspector, Plaintiff would inspect commercial sprinkler systems for code violations at Orlando International Airport. Plaintiff had received assignments to inspect different sites in the airport complex and would be paired with one other person to conduct inspections in accords with safety requirements mandated by the airport. Defendant routinely paired Plaintiff with a trainee rather than the required Certified Fire Spinkler Inspector.

15. Within weeks of commencing employment, Plaintiff received persistent questioning of his professionalism, intellect, and devotion to safety by both of his direct managers, in extreme contrast to the manner Plaintiff's white counterparts were treated.

16. Plaintiff initially suspected racial animus as the cause behind the behavior directed toward him but sought initially to avoid making any conclusions and to focus on making a good impression on the entire team.

17. After discriminatory, offensive behavior towards the Plaintiff continued, one of Plaintiff's managers, in a December 2024 meeting with the entire staff, explained that he treated the Plaintiff so because: "I am a redneck and I come from a family of rednecks," to confirm to the Plaintiff that he was treated disparately for his race, and that the manager could not change their view based on race given the longstanding racist views held by the manager's family intergenerationally.

4

18. After the meeting, Plaintiff was routinely assigned to perform the workload of two inspectors alone, to job sites that required a minimum of two certified inspectors, which ultimately led to Plaintiff suffering back injury in April 2025.

19. Plaintiff complained about the deficiency to management, which remained unaddressed, causing violations for shortage of personnel to continue, and for Plaintiff's injury to worsen.

20. Shortly after, Plaintiff's back injury necessitated his being put on 'light duty work' for one month. In response, Defendant demoted Plaintiff from "Lead Fire Sprinkler Inspector' to 'secondary inspector' and removed him from Orlando International Airport without explanation.

21. Plaintiff followed with a formal complaint to Human Resources in May 2025, claiming disparate treatment, safety violations for failing to assign at least two inspectors to job sites, and unfair demotion by virtue of their providing no cause or explanation for the decision to demote Plaintiff.

22. In response to Plaintiff's complaint, one of Plaintiff's managers stated to Plaintiff: "you know you are really a lead inspector," to suggest to Plaintiff that if he believed to himself that he was a lead inspector, then he was one.

23. Subsequently, Defendant assigned Plaintiff secondary inspector duties and issued defective equipment to Plaintiff for every subsequent assignment. Plaintiff reported the faulty equipment from June 2025 onward and was persistently met with claims that the faults were due to the Plaintiff's own 'user error' from August 2025 onward.

24. Defendant's IT personnel contradicted management's assertion that the causes of defects in equipment issued to Plaintiff were due to 'user error', and in August 2025, confirmed so and recommended Plaintiff be issued new or more recently manufactured equipment, as the prior machine issued to Plaintiff was more than 17 years old.

25. While Plaintiff awaited new equipment, he was informed that management had disputed IT Personnel's recommendation and had insisted that the error was due to the Plaintiff, who was subsequently again assigned the defective equipment.

26. Plaintiff again complained to management and was instructed to travel to the office to have IT personnel again examine the equipment. Upon arrival, management stated to Plaintiff that he was "not authorized" to enter the office and instructed the Plaintiff to only enter onto job sites. Management further stated that the defective equipment was not "the problem" but that the Plaintiff was.

27. Given the apparent unavailability of equipment for the Plaintiff alone, he resorted to conducting work manually by initially recording inspections by handwritten notes and later transcribing them for use by the Defendant and their clients.

28. In early September 2025, Plaintiff's elderly mother, of whom Plaintiff is her sole carer, suffered a major medical event, requiring intensive home care. Plaintiff reported the event to management, explaining that given his

imminent eligibility, he would be seeking leave under the Family and Medical Leave Act ("FMLA") to coordinate his mother's care. Plaintiff also requested immediate leave of one week while awaiting his becoming eligible for relief under the FMLA to tend to his mother's immediate medical needs, which was initially granted.

29. During that week, on or around September 21, 2025, and while awaiting eligibility and request for FMLA leave, Defendant requested that Plaintiff travel to the Orlando office, where Plaintiff was previously barred from visiting.

30. Upon arrival, Plaintiff was terminated from his position effective immediately.

## CLAIMS FOR RELIEF

### COUNT I – 42 U.S.C. § 1981 VIOLATION
### (DISCRIMINATION)

31. Plaintiff repeats, realleges, and incorporates by reference as though fully set forth here, the allegations contained in paragraphs 1 through 30, inclusive.

32. Plaintiff is a member of a protected class of persons under § 1981.

33. Plaintiff was subjected to disparate treatment by Defendant, based solely on Plaintiff's race and association with persons of a certain race.

34. The foregoing actions constitute unlawful discrimination, in violation of § 1981.

35. Defendant's actions were willful and conducted with malice.

36. As a direct and proximate result of Defendant's willful and reckless discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

37. Plaintiffs were injured due to Defendant's violations of § 1981, for which Plaintiff is entitled to legal and injunctive relief.

## COUNT II - 42 U.S.C. § 1981 VIOLATION
## (RETALIATION)

38. Plaintiff repeats, realleges, and incorporates by reference as though fully set forth here, the allegations contained in paragraphs 1 through 37, inclusive.

39. Plaintiff is a member of a protected class of persons under § 1981.

40. Plaintiff engaged in protected activity under § 1981 by complaining about, *inter alia*, the racial discrimination he experienced.

41. Defendant retaliated against Plaintiff for engaging in protected activity under § 1981 by terminating Plaintiff's employment.

42. Defendant's actions were willful and conducted with malice.

43. Defendant's retaliation was based solely on Plaintiff's exercise of their right to resist and oppose unlawful discrimination and harassment, which is protected under § 1981.

44. As a direct and proximate result of Defendant's willful and reckless discrimination, Plaintiff has suffered and will continue to suffer pain and

8

suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

45.    Plaintiff was injured due to Defendant's violations of § 1981, for which Plaintiffs is entitled to legal and injunctive relief.

## COUNT III – 42 U.S.C. § 2000e-2 VIOLATION
### (DISCRIMINATION)

46.    Plaintiff repeats, realleges, and incorporates by reference as though fully set forth here, the allegations contained in paragraphs 1 through 45, inclusive.

47.    Title VII prohibits unlawful employment practices, including discrimination against: "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

48.    Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of his race.

## COUNT IV – 42 U.S.C. § 2000e-2 VIOLATION
### (RETALIATION)

49.    Plaintiff repeats, realleges, and incorporates by reference as though fully set forth here, the allegations contained in paragraphs 1 through 48, inclusive.

50.    Title VII prohibits unlawful employment practices, including discrimination against any employee "because he has opposed any practice made an unlawful employment practice" under the act.

9

51. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by retaliating against Plaintiff.

**COUNT V - FLA. STAT. § 760.10(1)**
**(DISCRIMINATION)**

52. Plaintiff repeats, realleges, and incorporates by reference as though fully set forth here, the allegations contained in paragraphs 1 through 51, inclusive.

53. Fla. Stat. § 760.10(1)(a) prohibits unlawful employment practices, including discrimination based on race.

54. Defendants engaged in unlawful employment practices prohibited by the FCRA.

**COUNT VI - FLA. STAT. § 760.10(7)**
**(RETALIATION)**

55. Plaintiff repeats, realleges, and incorporates by reference as though fully set forth here, the allegations contained in paragraphs 1 through 54, inclusive.

56. Fla. Stat. § 760.10(7) prohibits unlawful employment practices, including retaliation.

57. Defendants engaged in unlawful employment practices prohibited by the FCRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment that:

a. A jury trial on all issues so triable;

b. That process issue and that this Court take jurisdiction over the case;

c. Judgment against Defendant, permanently enjoining Defendant from future violations of § 1981 and the FCRA, and remedying all lost income,

10

raises, promotions, and other benefits of which Plaintiffs were unlawfully deprived;

d.    Compensatory damages, including emotional distress, allowable at law;

e.    Punitive damages;

f.    Reinstatement of Plaintiffs to a position comparable to his prior position, or in the alternative, front pay;

g.    Prejudgment interest on all monetary recovery obtained;

h.    All costs and attorney fees incurred in prosecuting these claims; and

i.    For such further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable.

I declare under penalty of perjury that the above is true and correct.

June 1, 2026
Dated

Signature, *Pro Se* Plaintiff
Gilbert Roman
950 Woodlark Drive
Haines City, FL 33844
groman2009@yahoo.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing First Amended Complaint was served on June 1, 2026, by US Mail on the Defendant at its headquarters located at 5925 Stonebridge Drive, Pleasanton, CA 94588-2705.